**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>$182,070.00 IN UNITED STATES CURRENCY;<br>$2,000.00 IN UNITED STATES CURRENCY; AND<br>$5,119.00 IN UNITED STATES CURRENCY<br><br>      Defendant *in Rem*. | No: 1:26-cv- |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is a civil forfeiture action *in rem*, as authorized by 21 U.S.C. § 881 and 28 U.S.C. § 2461, in which the United States of America alleges that that the defendants in rem are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they are moneys furnished or intended to be furnished in exchange for a controlled substance in violation of Title 21, United States Code, Chapter 13, Subchapter I, proceeds traceable to such exchanges, and/or used or intended to be used to facilitate any violation of Title 21, United States Code, Chapter 13, Subchapter I.

### DEFENDANTS IN REM

2. The defendants in rem consist of:

   a. $182,070.00 in United States currency seized from within a lockbox/safe at the residence located at 18 Ticonic Street, Waterville, Maine on January

2, 2026, and assigned Asset ID 26-FBI-001578;

b. $2,000 in United States currency seized from a plastic cabinet or drawer within a bedroom of the residence located at 6 Ridge Road, Waterville, Maine on December 30, 2025, and assigned Asset ID 26-FBI-001579; and

c.  $5,119.00 in United States currency seized from Andrew Symonevich's wallet and a glove box in a 2023 Hyundai Elantra registered to, and in the possession of, Andrew Symonevich on December 30, 2025, and assigned Asset ID 26-FBI-001580

collectively, the "defendants in rem."

3.      The Federal Bureau of Investigation ("FBI") deposited the defendants in rem to an account controlled by the United States Marshals Service ("USMS") and the defendants in rem are presently in the custody of the USMS.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the District of Maine. Further, venue is proper in this district pursuant to 28 U.S.C. § 1395(a), as referenced in 28 U.S.C. § 1355(b)(1)(B), which permits a civil proceeding for forfeiture to "be prosecuted in the district where it accrues or the defendant is found."

## FORFEITURE AUTHORITY

6.      Pursuant to 21 U.S.C. § 881:

The following shall be subject to forfeiture to the United States and

no property right shall exist in them—

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [Title 21, United States Code, Chapter 13, Subchapter I], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [Title 21, United States Code, Chapter 13, Subchapter I].

21 U.S.C. § 881(a)(6). Moreover, "[a]ll right, title, and interest in property described in [21 U.S.C. § 881(a)] shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h).

7. Pursuant to 21 U.S.C. § 881:

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

21 U.S.C. § 881(d).

**FACTUAL BASIS FOR FORFEITURE**

8. Between July 2, 2024, and October 10, 2024, the Waterville Police Department ("WPD") received three crime tips regarding Andrew Symonevich ("Symonevich"). The three tips appeared to be made by the same individual. The tips included information, in summary and in part, that Symonevich was selling cocaine,

3

heroin, and crystal meth. Two of the tips included information that Symonevich had multiple "runners" involved in the distribution of drugs. Jake Whitley, Officer with the WPD and Task Force Officer ("TFO") with the FBI, reviewed these tips in early 2025.

9.      On January 21, 2025, the WPD received a call from a complainant who did not leave identifying or contact information. TFO Whitley believed, based upon the content of the call, that the individual who placed the call was the same individual who provided the above-referenced tips in 2024. The call included information, in summary and in part, that Symonevich had others "sling" methamphetamine, "crack" (a term for cocaine base), "coke" (a term for cocaine), and "fetty" (a term for fentanyl), that Symonevich sells drugs out of a parking lot on Front Street, and that Symonevich travels to Lewiston and Portland.

10.     Based upon the tips and call, as well as information obtained from prior calls for service and other sources, TFO Whitley initiated an investigation into Symonevich's drug-distribution activities.

11.     TFO Whitley confirmed through a Bureau of Motor Vehicles registration query that a white, 2023 Hyundai Elantra bearing Maine animal welfare registration plate HAMI8R was registered to Symonevich, with a registration address of 6 Ridge Road, Waterville, Maine.

12.     In the course of the investigation, TFO Whitley applied for, and was granted, search warrants authorizing the placement of electronic tracking devices on the 2023 Hyundai.

13.     In late-November 2025, TFO Whitley met with a Confidential Defendant ("CD-1") who wished to provide information to law enforcement for potential

consideration regarding pending criminal charges. Among other things, CD-1 disclosed, in summary and in part:

    a. CD-1 was a drug user and trafficker.

    b. Symonevich, whom CD-1 referred to as "Andy," was CD-1's source of supply for drugs.

    c. CD-1 used and sold illicit drugs they obtained from Symonevich.

    d. CD-1 would obtain anywhere from half-an-ounce to a pound of methamphetamine from Symonevich.

    e. Symonevich only accepted cash payment for drugs.

    f. Symonevich sold methamphetamine for $275 per ounce and $900 per quarter-pound.

    g. Symonevich sold cocaine for $400 per half-ounce and $700 per ounce.

14. CD-1 showed TFO Whitley photographs from October 2025 of methamphetamine that CD-1 purchased from Symonevich.

<u>December 2025 Controlled Purchase from Symonevich</u>

15. In the latter half of December 2025, law enforcement conducted a controlled purchase of methamphetamine from Symonevich utilizing CD-1.

16. CD-1 was cooperating with law enforcement for potential consideration regarding pending criminal charges.

17. TFO Whitley met with CD-1 at a pre-determined meeting location and CD-1 was searched for contraband. None was located. CD-1 was provided $600.00 in pre-recorded United States currency to use to purchase methamphetamine from Symonevich.

18. Law enforcement observed CD-1 going to 6 Ridge Road, Waterville, Maine to meet with Symonevich.

19. At 6 Ridge Road, CD-1 purchased approximately 2 ounces of suspected methamphetamine from Symonevich in exchange for the $600.00 in pre-recorded United States currency.

20. Following the purchase from Symonevich, law enforcement observed CD-1 leaving 6 Ridge Road.

21. CD-1 provided the suspected methamphetamine to TFO Whitley. CD-1 was again searched for any other contraband and none was located.

22. TFO Whitley subsequently tested the suspected methamphetamine that CD-1 obtained from Symonevich using a DetecaChem drug identification device, which yielded a presumptive positive response for methamphetamine.

23. Subsequent laboratory testing confirmed that the substance purchased from Symonevich had a net weight of approximately 55.8 grams and contained methamphetamine hydrochloride (with at least approximately 45.8 grams of pure methamphetamine hydrochloride).

<u>December 30, 2025 Search of Unit 12 at Always Sunny Storage in Winslow, Maine</u>

24. TFO Whitley learned that Symonevich had access to a storage locker—identified as Unit 12—at Always Sunny Storage located at 69 Chaffee Brook Road in Winslow, Maine.

25. Symonevich's mother was the named renter of Unit 12.

26. A tracking device on Symonevich's 2023 Hyundai showed that the Hyundai stopped in the area of Always Sunny Storage for varying lengths of time on

multiple dates including: June 1, 2025, June 9, 2025, June 10, 2025, June 11, 2025, June 13, 2025, July 4, 2025, July 8, 2025, July 10, 2025, July 17, 2025, July 18, 2025, July 19, 2025, and July 21, 2025.

27.    During another period in which a tracking device was attached to Symonevich's 2023 Hyundai, a device showed that the Hyundai stopped in the area of Always Sunny Storage for varying lengths of time on multiple dates including: December 17, 2025, December 20, 2025, December 23, 2025, and December 24, 2025.

28.    On December 30, 2025, law enforcement personnel executed a state search warrant at Unit 12 at Always Sunny Storage in Winslow, Maine.

29.    At the time of the search, Unit 12 was secured by a Brinks padlock. The lock had to be cut to access Unit 12.

30.    Within Unit 12, officers located a reusable shopping bag containing suspected crystal methamphetamine.

31.    Within Unit 12, officers also located a 9mm firearm, two loaded magazines, and a box of 9mm ammunition.

32.    The seized methamphetamine weighed 16 pounds and 1.2 ounces (including packaging).

33.    Subsequent laboratory testing confirmed that the seized substance had a net weight of at least approximately 7,141 grams and contained methamphetamine hydrochloride (with at least approximately 5,927 grams of pure methamphetamine hydrochloride).

December 30, 2025 Search of 6 Ridge Road, Waterville, Maine

34.    Symonevich resided at 6 Ridge Road, Waterville, Maine.

7

35.    Symonevich's significant other, Stormy Little, also resided at 6 Ridge Road, Waterville, Maine.

36.    On December 30, 2025, law enforcement personnel executed a state search warrant at 6 Ridge Road in Waterville, Maine.

37.    Within the bedroom shared by Symonevich and Little, officers located a plastic cabinet or set of plastic drawers.

38.    Within the plastic cabinet or drawers, officers located $2,000.00 in United States currency. The currency was secured in a black hair tie and marked with a yellow piece of paper as "2K."

39.    Officers also located a digital scale within or on the plastic cabinet.



40.    Officers located another digital scale on a TV tray in the bedroom.



<u>December 30, 2025 Search of Symonevich's 2023 Hyundai Elantra</u>

41.    On December 30, 2025, law enforcement personnel executed a state search warrant on Symonevich's 2023 Hyundai.

42.    Within Symonevich's 2023 Hyundai, officers located a wallet containing $3,788.00 in United States currency.

9



43.     Within the glove box of the 2023 Hyundai, officers located $1,331.00 in United States currency.



44.   Officers also located two cellphones within the vehicle.

45.   Officers located two Brinks keys in the driver's-side door of the vehicle.

46.   TFO Whitley subsequently tested the two keys seized within the vehicle on the Brinks lock that had been securing Unit 12 at Always Sunny Storage in Winslow, Maine at the time of law enforcement's search of Unit 12. While one key had not worked on the lock while it was still securing the unit (this is believed to have occurred due to the lock being frozen), both keys were able to open the lock after it had been cut and removed from Unit 12.

47.   A replica "beer can" hide was also located on the floor of the vehicle.

<u>Review of Tracking Device Information</u>
<u>and Events Following Symonevich's Arrest</u>

48.   On December 30, 2025, Symonevich was arrested on state charges of

11

Aggravated Trafficking in Scheduled Drugs and Illegal Possession of a Firearm.

49.     A Bail Commissioner set Symonevich's bail at $35,000.00 in cash with conditions of release.

50.     During the booking process, TFO Whitley informed Symonevich that his bail was set in the amount of $35,000.00.

51.     Symonevich informed TFO Whitley of his desire to make a phone call regarding bail. Symonevich informed TFO Whitley that Symonevich's father had a lot of money in stocks.

52.     Symonevich called Little from the booking room at the Waterville Police Department.

53.     Symonevich's calls from the booking room were recorded.

54.     During one call, in summary and in part:

   a.   Symonevich mentioned that his father has money from his career and stocks.

   a.   Symonevich directed Little that she may need to help Symonevich's father count the money because his father cannot see that well.

55.     Following Symonevich's calls with Little, Little and Symonevich's sister, Amy Mason, arrived at the WPD with a bag containing $35,000.00 in United States currency. It was claimed that the money was Symonevich's father's money.

56.     The $35,000.00 was provided to the Bail Commissioner when Symonevich was released on bail.

57.     Before he was released, Symonevich signed a bail bond acknowledging, in part, that the $35,000.00 had been posted as bail. The bail bond indicated that the

12

funds were first-party, as the box for third-party bail was not checked.

58.     On December 31, 2025, WPD Detectives requested that the Bail Commissioner return the $35,000.00 used to bail Symonevich to the WPD. The Bail Commissioner brought the United States currency to the WPD.

59.     WPD personnel compared the serial numbers on the bills posted as bail for Symonevich to the serial numbers of the pre-recorded bills provided to CD-1 and used by CD-1 to purchase methamphetamine from Symonevich in December 2025.

60.     Of the bills posted as bail for Symonevich, twenty-five (25) twenty-dollar bills—totaling $500.00—were pre-recorded bills that CD-1 had provided to Symonevich in exchange for methamphetamine in December 2025.

<u>January 2, 2026 Search of 18 Ticonic Street, Waterville, Maine</u>

61.     John Symonevich ("John S.") is Symonevich's father.

62.     John S. resides at 18 Ticonic Street in Waterville, Maine.

63.     One or more electronic tracking devices placed on Symonevich's 2023 Hyundai showed that the Hyundai stopped in the area of 18 Ticonic Street on nine occasions between May 31, 2025, and July 28, 2025, and on four occasions between December 9, 2025, and December 27, 2025.

64.     On December 27, 2025, a tracking device showed that the 2023 Hyundai stopped briefly in the area of Always Sunny Storage in Winslow, Maine immediately before stopping in the area of 18 Ticonic Street in Waterville, Maine.

65.     On January 2, 2026, law enforcement personnel executed a state search warrant at 18 Ticonic Street in Waterville, Maine.

66.     In an upstairs bedroom of the residence at 18 Ticonic Street, officers

located a lockbox or safe containing $182,070.00 in United States currency.



67.     Law enforcement personnel conducted video- and/or audio-recorded interviews with John S. at 18 Ticonic Street during or following the execution of the search warrant. While John S. initially claimed that the currency in the lockbox/safe was exclusively his money, John S. ultimately admitted that he was trying to protect Symonevich and disclosed the following, in summary and in part.

  a.  The money in the lockbox/safe was Symonevich's.

  b.  When asked to tell officers about it, John S. stated, "I don't know [unintelligible] about it, I don't pay attention to what goes on because I don't want to know nothing."

  c.  "Once in a while he'd [Symonevich] come over and put some money in the

box and all that. I wasn't really paying attention, kinda hoping it was legal to tell you the truth . . . . I didn't want to ask any questions."

d.  The lockbox/safe was John S.'s but Symonevich uses it.

e.  He estimated Symonevich had been putting money in the lockbox/safe for approximately the last two or three years.

f.  He had not really seen Symonevich put money in the lockbox/safe but a lot of times he [John S.] is not there. Symonevich tells him that is where Symonevich puts money. Symonevich told him what Symonevich has had lately, which was about $191,000.

g.  Symonevich has not really told him how he got the money. He suspected Symonevich was selling drugs and he did not want to know.

h.  A law enforcement officer asked, "Is any of the money in that safe yours?" He responded, "Nope."

i.  The contrary information he had shared with the officers previously was to cover for Symonevich.

j.  Symonevich's sister and Symonevich's girlfriend came to get the $35,000 for Symonevich's bail money.

68.  Portions of the currency in the lockbox/safe were secured in black hair ties and marked with pieces of paper as containing various amounts. Other portions were secured in bands or paper wrappers. Examples are included below.





16

## CLAIM FOR FORFEITURE

69.     The allegations contained in paragraphs 1 through 68 of this Verified Complaint are incorporated herein.

70.     The defendants in rem are subject to civil forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they are moneys furnished or intended to be furnished in exchange for a controlled substance in violation of Title 21, United States Code, Chapter 13, Subchapter I, including 21 U.S.C. §§ 841 and 846, proceeds traceable to such exchanges, and/or used or intended to be used to facilitate any violation of Title 21, United States Code, Chapter 13, Subchapter I, including 21 U.S.C. §§ 841 and 846.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America requests:

1.      that a warrant and summons for the arrest of the defendants in rem, in the form submitted with this Verified Complaint, issue to the United States Marshal for the District of Maine, or their designee, commanding them to (i) arrest the defendants in rem, and (ii) give notice to all interested parties to appear and show cause why forfeiture should not be decreed;

2.      that judgement of forfeiture be decreed against the defendants in rem;

3.      that thereafter, the defendants in rem be disposed of according to law; and

4.      that this court grant the United States its costs and all other relief to which the United States may be entitled.

Dated: June 18, 2026                        Respectfully submitted,

                                            ANDREW B. BENSON
                                            United States Attorney

                                    BY:     */s/ Nicholas Heimbach*
                                            Nicholas Heimbach
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            100 Middle Street
                                            East Tower, 6th Floor
                                            Portland, Maine 04101
                                            (207) 780-3257
                                            Nicholas.heimbach@usdoj.gov

**VERIFICATION**

I, Kurt Ormberg, being duly sworn, depose and state that I am a Special Agent with the Federal Bureau of Investigation, and as such have responsibility for the within action, that I have read the foregoing Verified Complaint and know the contents thereof, and declare under penalty of perjury that the contents thereof are true to the best of my knowledge, information, and belief.

The sources of my information and grounds of my belief are official records and files of the United States and information obtained during an investigation and review of one or more alleged violations of Title 21, United States Code, Sections 841 and 846.

Dated: June 18, 2026                    _/s/ Kurt Ormberg_____
                                         Kurt Ormberg
                                         Special Agent
                                         Federal Bureau of Investigation


STATE OF MAINE
Cumberland, ss.

Subscribed and sworn to before me this 18th day of June 2026.


                                         _/s/ Kimberley Woodward_
                                         Kimberly P. Woodward
                                         Notary Public
                                         My commission expires: 11/19/2026

19